UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARIANNE BOROWSKI,                              16-CV-999-LJV-MJR
                                                REPORT AND RECOMMENDATION
                Plaintiff,

        -v-

VINCENT MORDINO,

                Defendant.
_____

This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 15). Before the Court is defendant Vincent Mordino's motion for substitution of party and to dismiss plaintiff Carianne Borowski's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. (Dkt. No. 10). For the following reasons, it is recommended that the motion be granted in part and denied in part.[1]

## BACKGROUND

Plaintiff Carianne Borowski commenced this action in 2016 against Vincent Mordino, a United States Customs and Border Protection ("CBP") Officer, alleging that Officer Mordino violated her constitutional and common law rights during an incident at the Peace Bridge Plaza in Buffalo, New York on December 14, 2013. (*See* Dkt. No. 1 ("Compl.")). The plaintiff alleges that she was traveling with her family by car from

---

[1] The Court scheduled oral argument on the motion for June 22, 2017, but plaintiff's counsel failed to appear on that date. As requested by defense counsel and reflected in the Court's minute entry regarding the scheduled argument (Dkt. No. 22), the Court granted the parties permission to submit supplemental memoranda of law addressing the Supreme Court's recent decision in *Ziglar v. Abbasi*, --- U.S. ----, 137 S. Ct. 1843 (2017). Officer Mordino, but not the plaintiff, thereafter submitted a supplemental memorandum of law. (*See* Dkt. No. 23).

Buffalo to Canada that day. (*Id.* ¶¶9, 11). Matthew Borowski — the plaintiff's husband who is serving as her attorney in the instant action — was driving the vehicle, the plaintiff was in the front passenger seat, and their three young children were in the back seat. (*Id.* ¶11). It was snowing heavily at the time, and visibility was low. (*Id.* ¶12). Shortly after 6:00 p.m., the plaintiff's vehicle arrived at the Peace Bridge Plaza, where Officer Mordino was operating an unmarked outbound inspection on the side of the roadway. (*Id.* ¶¶12-13). Officer Mordino wore dark clothing and a full-face mask; he displayed no visible badge or uniform to identify himself as a CBP Officer. (*Id.* ¶13). Officer Mordino ordered the plaintiff's husband to stop the vehicle and immediately yelled "registration" into the open driver's side window. (*Id.* ¶14). Officer Mordino did not, however, identify himself as a CBP Officer, nor did he display his badge or give any explanation for stopping the vehicle. (*Id.* ¶¶15-16). When the plaintiff's husband asked Officer Mordino if he had "reasonable suspicion" for the stop, Officer Mordino became angry and raised his voice. (*Id.* ¶¶18-19). The plaintiff's husband did not immediately produce his vehicle registration, but he did advise Officer Mordino that he is a licensed attorney and that he, the plaintiff, and their three children are all United States citizens. (*Id.* ¶¶20-21). Officer Mordino nonetheless ordered the plaintiff's husband to drive the vehicle to the side of the roadway, which he did. (*Id.* ¶21).

After the plaintiff's husband stopped the vehicle on the side of the roadway, the plaintiff exited the vehicle and opened the backseat passenger door to attend to one of her children, who was crying. (*Id.* ¶24). Officer Mordino, standing on the driver's side of the vehicle at the time, directed the plaintiff to return to the vehicle. (*Id.* ¶25). When the plaintiff failed to do so, Officer Mordino ran to the plaintiff, grabbed her by her arms,

slammed her body against the vehicle, and placed her in handcuffs. (*Id.*).[2] The plaintiff was then escorted to a secondary inspection building, where she was held in a locked cell for an unspecified period of time. (*Id.* ¶26). The plaintiff states that Officer Mordino and other CBP Officers denied her medical treatment during her detention, and that she suffered severe left shoulder pain, left wrist pain, lumbar spine pain, hyperextension of her arms, and severe emotional pain and trauma as a result of Officer Mordino's actions. (*Id.* ¶¶27-33). The plaintiff and her family were held in the secondary inspection building for approximately three hours. (*Id.* ¶35). Prior to their release, the plaintiff was issued a violation notice for "[f]ailure to obey lawful order." (*Id.* ¶36; Ex. 3). The plaintiff and her husband had their NEXUS[3] cards revoked as well. (*Id.* ¶34). The violation notice against the plaintiff was later dismissed by the Hon. Jeremiah J. McCarthy, who issued a Decision and Order on March 28, 2014 finding that the government failed to prove that the plaintiff knowingly disobeyed Officer Mordino's order to return to the vehicle:

> Given the weather conditions and the vehicular noise in the area, coupled with my review of the video . . ., it appears that [the plaintiff] was intent on aiding her child in the back seat of the vehicle, and may not have heard the instruction. Therefore, the charge is dismissed.

(*Id.* ¶37; Ex. 2). The plaintiff and her husband had their NEXUS cards returned to them shortly after Judge McCarthy dismissed the violation notice. (*Id.* ¶39). The plaintiff states that "[o]n several occasions since the incident, [Officer] Mordino has threatened

---

[2] A video recording of this part of the incident is attached as an exhibit to the plaintiff's complaint. The Court has reviewed the video recording in its entirety.
[3] The plaintiff alleges that a NEXUS card is a "trusted traveller [sic] card that facilitates travel across the border." (Compl. ¶34).

- 3 -

and harassed [her] husband, who crosses the border as part of his daily commute, during secondary inspection at the Peace Bridge." (*Id.* ¶40).

The plaintiff sets forth six claims in her complaint. The first three claims are *Bivens*[4] claims alleging that Officer Mordino violated the plaintiff's First, Fourth, Fifth, and Eighth Amendment rights during the alleged incident. (*Id.* ¶¶41-49). The plaintiff's fourth, fifth, and sixth claims allege that Officer Mordino committed the common-law torts of negligence, assault and battery, and negligent infliction of emotional distress. (*Id.* ¶¶50-64). The plaintiff seeks an unspecified amount of compensatory and punitive damages for Officer Mordino's alleged wrongdoing. (*Id.* ¶65). In lieu of answering the complaint, Officer Mordino filed the instant motion for substitution of party and to dismiss the complaint. (Dkt. No. 10).

## DISCUSSION

I. *Rules 12(b)(1), 12(b)(6), and 56*

Officer Mordino moves for dismissal of the plaintiff's common law and official capacity claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and dismissal of the plaintiff's *Bivens* claims pursuant to Rules 12(b)(6) and 56. The plaintiff argues that Officer Mordino's request for summary judgment under Rule 56 should be denied as premature because she has not yet had the opportunity to conduct any discovery in this action, as Officer Mordino filed the instant motion in lieu of answering the complaint and prior to the Court entering a Case Management Order.

"Although a motion for summary judgment may be filed 'at any time until 30 days after the close of all discovery,' Fed. R. Civ. P. 56(b), summary judgment is generally not appropriate until after some discovery has occurred." *Houston v. Sheahan*, No. 13-

---

[4] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

CV-6594-FPG, 2016 WL 554849, at *1 (W.D.N.Y. Feb. 10, 2016). "Only in the *rarest of cases* may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (emphasis added). The Court agrees with the plaintiff that Officer Mordino's motion for summary judgment should be denied without prejudice as premature because the plaintiff has not yet had the opportunity to obtain all of the discovery materials she needs to oppose the motion. For example, the plaintiff has not deposed Officer Mordino or his supervisor, Peter Scoma, both of whom submitted declarations in support of Officer Mordino's motion for summary judgment. (*See* Dkt. No. 14). While the plaintiff did receive some discovery materials in her criminal case, including a video recording of the alleged incident, "the discovery rules governing civil litigation are more liberal than those in the criminal context." *See S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 134 n.5 (E.D.N.Y. 2012). The plaintiff should be allowed to serve discovery requests and take depositions before having to oppose Officer Mordino's motion for summary judgment, particularly because the video recording of the alleged incident is somewhat grainy and does not contain any sound. Thus, it is recommended that Officer Mordino's motion for summary judgment be denied, and that his request for dismissal instead be evaluated under Rules 12(b)(1) and 12(b)(6), only.

A defendant may move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

A defendant may move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. A claim is properly dismissed for lack of subject matter jurisdiction when the Court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Id.* (alteration in original) (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

    II.   <u>*First Amendment Claim*</u>

The plaintiff's First Amendment claim alleges that Officer Mordino assaulted her in retaliation for her husband having asked the Officer if he had reasonable suspicion to

stop their vehicle. Officer Mordino argues that this claim should be dismissed because there is no *Bivens* remedy for First Amendment violations.

The Supreme Court in *Bivens* "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "Although initially predicated on the traditional understanding that the existence of a right must imply a remedy, the Supreme Court has since rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court." *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 767 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). Indeed, the Supreme Court stated this past term in *Ziglar v. Abbasi* that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." --- U.S. ----, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675).

*Ziglar* concerned an appeal from the Second Circuit's decision in *Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015). In *Turkmen*, the Second Circuit declined to expand *Bivens* to a free-exercise claim, reasoning that the Supreme Court "has 'declined to extend *Bivens* to a claim sounding in the First Amendment.'" *Id.* at 236 (quoting *Iqbal*, 556 U.S. at 675). The *Turkmen* Court did, however, apply *Bivens* to other claims at issue in the action that arose out of the plaintiffs' conditions of confinement in the wake of the September 11, 2001 attacks. *See id.* at 237. Without specifically addressing the *Turkmen* Court's conclusion that a *Bivens* remedy is not available for the plaintiffs' free-exercise claim, the *Ziglar* Court disagreed with its decision to apply *Bivens* to the plaintiffs' conditions of confinement claims. In so ruling, the Supreme Court observed

that it has approved of an implied damages remedy under the Constitution in only three instances: (1) a case alleging that federal officers violated the Fourth Amendment prohibition against unreasonable searches and seizures (*Bivens*); (2) a case in which an administrative assistant sued a Congressman for gender discrimination under the Fifth Amendment Due Process Clause (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) a case in which an inmate's estate alleged that federal jailers violated the Eighth Amendment Cruel and Unusual Punishments Clause by failing to give the inmate adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)).  *See Ziglar*, 137 S. Ct. at 1854-55.

*Ziglar* and *Turkmen* make plain that the Supreme Court has never implied a *Bivens* remedy for a First Amendment violation.  Pursuant to this authority, the Court declines to extend *Bivens* to the plaintiff's First Amendment retaliation claim against Officer Mordino, and it is recommended that the claim be dismissed for failure to state a cause of action.  *See Tanvir*, 128 F. Supp. 3d at 768-71 (applying *Turkmen* and declining to extend *Bivens* to the plaintiffs' First Amendment retaliation claim).[5]  Given this recommendation, the Court need not reach Officer Mordino's alternative arguments that the plaintiff has not plausibly alleged a First Amendment violation and that he is entitled to qualified immunity.

### III. *Fourth Amendment Claims*

The plaintiff alleges for her second claim that Officer Mordino "violate[d] [her] constitutional right to be free from an unreasonable seizure of her conveyance and

---

[5]  Contrary to the plaintiff's argument, *Hartman v. Moore*, 547 U.S. 250 (2006) and *Reichle v. Howards*, 566 U.S. 658 (2012) did not extend *Bivens* to claims arising under the First Amendment.  *See Tanvir*, 128 F. Supp. 3d at 770 n.12 (explaining that *Hartman* assumed without deciding that *Bivens* applies to certain First Amendment claims); *Reichle*, 566 U.S. at 663 n.4 ("We have never held that *Bivens* extends to First Amendment claims.").

person and the right to be free from the use of excessive force" under the Fourth Amendment and the Due Process Clause of the Fifth Amendment.  (Compl. ¶45).  Although these allegations do not set forth a Fifth Amendment due process claim, *see generally Graham v. Connor*, 490 U.S. 386, 394-95 (1989), they may form the basis of two distinct Fourth Amendment claims:  (1) a claim challenging Officer Mordino's decision to stop and detain the plaintiff; and (2) a claim challenging Officer Mordino's use of force against the plaintiff.  The Court will address each claim in turn.

### A. Stop and Detention

"Routine" suspicionless searches and detentions at the border do not violate the Fourth Amendment.  *Tabbaa v. Chertoff*, 509 F.3d 89, 97-98 (2d Cir. 2007) ("It is well established that the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime.").  The "determining factor" in deciding whether a search or detention is "routine" is "the level of intrusion into [the plaintiff's] privacy."  *Id.* at 98 (quoting *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006)).  This standard applies not only to inbound inspections, but also to outbound inspections, *i.e.*, searches of persons and items leaving the United States.  *See United States v. Benevento*, 836 F.2d 60, 68 (2d Cir. 1987), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

The stop and detention the plaintiff complains of here were "routine" because the plaintiff was detained for no more than three hours and did not have her personal privacy unduly intruded upon during this time, as she does not allege that she was subjected to any type of invasive search or examination during her detention.  *See*

*Tabbaa*, 509 F.3d at 98-101 (finding detentions ranging from four to six hours to be routine notwithstanding plaintiffs having been frisked, fingerprinted, and photographed during their respective detentions); *see also Bibicheff v. Holder*, 55 F. Supp. 3d 254, 262-64 (E.D.N.Y. 2014) (dismissing Fourth Amendment claim alleging that the plaintiff was detained for a total of six hours over the course of three secondary inspections). That the plaintiff was handcuffed and placed in a cell for part of her detention does not render her detention non-routine.  *See United States v. Nava*, 363 F.3d 942, 946 (9th Cir. 2004) ("[We] conclude that [the defendant] being asked to leave his truck, being handcuffed and told it was for safety reasons, being escorted in handcuffs to the security office, having had a pat down search conducted, and being forced to wait in the locked security office while his truck was searched did not constitute an arrest under the Fourth Amendment.  Rather, it was a reasonable border detention.").  Accordingly, the plaintiff's stop-and-detention claim should be dismissed under Rule 12(b)(6) for failure to state a cause of action.  The plaintiff having failed to state a claim, the Court need not reach Officer Mordino's alternative argument that he is entitled to qualified immunity on the claim.

      B.    <u>*Excessive Force*</u>

An officer's use of force in the context of a search and seizure violates the Fourth Amendment if the officer's actions were objectively unreasonable in light of the facts and circumstances confronting him.  *Graham*, 490 U.S. at 397.  As relevant here, "courts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage[,] [and] a motion to dismiss may be granted in an excessive force case only if, after accepting all allegations as true, the force used was objectively reasonable

- 10 -

as a matter of law." *Hester-Bey v. Ford*, No. 13-CV-4656(CBA)(LB), 2015 WL 4910576, at *3 (E.D.N.Y. Aug. 13, 2015).

Here, Officer Mordino allegedly "physically attacked the plaintiff" by "grabbing her arms swiftly and pulling them backward, slamming her body into the vehicle using the force of his weight, and cuffing her wrists in a violent manner." (Compl. ¶25). The plaintiff claims that she suffered severe left shoulder pain, left wrist pain, lumbar spine pain, hyperextension of her arms, and severe emotional pain and trauma as a result of the attack, and that she visited the emergency room for treatment the next day. According to the plaintiff, Officer Mordino was not justified in using any force against her because he observed the plaintiff's children in the backseat of the vehicle and knew or should have known that the plaintiff left the vehicle to attend to her children. Accepting these allegations as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has adequately alleged an excessive force claim under the Fourth Amendment. *See Robison v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987) (denying dismissal of excessive force claim where the plaintiff contended that the defendant police officer "'pushed' her against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back,'" resulting in bruises) (alterations in original). Officer Mordino's contention that he used a reasonable amount of force during the incident because he had to make a split second judgment call in poor weather conditions is an argument better suited for summary judgment or trial, not a motion to dismiss. The parties' disagreement as to whether the situation required the use of force and whether Officer Mordino used an excessive amount of force likewise precludes granting Officer Mordino qualified immunity at this stage of the

proceeding. *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("Where the circumstances are in dispute, and 'contrasting accounts . . . present factual issues as to the degree of force actually employed and its reasonableness,' a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.") (alteration in original) (quoting *Kerman v. City of N.Y.*, 261 F.3d 229, 239 (2d Cir. 2001)). It is therefore recommended that the plaintiff's Fourth Amendment excessive force claim survive dismissal.

## IV. *Eighth Amendment Claim*

The plaintiff alleges that her confinement in a holding cell at the secondary inspection building from which she could observe one of her children crying constitutes cruel and unusual punishment in violation of the Eighth Amendment. The Court will construe this claim as having been brought pursuant to the Due Process Clause of the Fifth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause . . . rather than the Cruel and Unusual Punishments Clause of the Eight [sic] Amendment.").[6]

A conditions of confinement claim under the Due Process Clause consists of two prongs: "an 'objective prong' [ ] that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a '*mens rea* prong' or 'mental element prong' — [ ] that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

---

[6] The Second Circuit in *Darnell* addressed the rights of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, but in doing so, it noted that its analysis "should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment." 849 F.3d at 21 n.3.

Under the objective prong, the conditions of the plaintiff's confinement "must be assessed according to two components, severity and duration, on a case-by-case basis." *Id.* at 31. Ultimately, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted).

The detention at issue in this case was neither lengthy nor severe. The plaintiff was detained in the secondary inspection building for no more than three hours and kept in a holding cell for only part of that time. Accepting as true the plaintiff's allegation that she could see her child crying from her cell, separation from family and loved ones is not a "severe" condition of confinement but rather an ordinary feature of pretrial detention. In addition, the plaintiff alleges that she was later released from her cell to attend to her child. (Compl. ¶26). For these reasons, the plaintiff has not adequately alleged that her detention posed an unreasonable risk of serious damage to her physical or mental health, and the plaintiff's conditions of confinement claim should be dismissed for failure to state a claim. In light of this recommendation, the Court need not consider Officer Mordino's alternative arguments that he was not personally involved in the plaintiff's confinement, that he did not act with deliberate indifference to the plaintiff's conditions of confinement, and that he is protected by qualified immunity.

V.   *Common Law Claims*

Relying on the Westfall Act, Officer Mordino argues that because the Acting United States Attorney for the Western District of New York, as designee of the United States Attorney General, certified that he was acting within the scope of his employment

during the alleged incident, the United States should be substituted as party defendant in his place.  (*See* Dkt. No. 11 at 30 (certification of James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, "that Vincent Mordino was acting within the scope of his office and employment as an employee of the United States at the time of the incident alleged in [the] complaint")).  Assuming the Court grants his motion to substitute, Officer Mordino further argues that the plaintiff's common law claims against the United States should be dismissed for lack of subject matter jurisdiction because the plaintiff did not file an administrative claim with the CBP before commencing suit as required under the Federal Tort Claims Act ("FTCA").

The Westfall Act provides in relevant part that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."  28 U.S.C. §2679(d)(1).  An Attorney General's certification does not, however, "conclusively establish as correct the substitution of the United States as defendant in place of the employee," *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), and "[a] district court will conduct *de novo* review of a §2679(d) certification if [the] plaintiff[ ] 'allege[s] with particularity facts relevant to the scope-of-employment issue,'" *Bello v. United States*, 93 F. App'x 288, 289 (2d Cir. 2004) (Summary Order) (quoting *McHugh v. Univ. of Vt.*, 966 F.2d 67, 74 (2d Cir. 1992)).  In reviewing certification, "[t]he court must view the tortious conduct in the light most favorable to plaintiff, but [ ] make[ ]

its own findings of fact with respect to the scope of the tortfeasor's employment and, in so doing, the court may rely on evidence outside the pleadings." *Id.* at 289-90. Whether an employee acted within the scope of his employment is determined under "state law principles." *Id.* at 289. The parties agree that New York State law provides the relevant state law principles in this case. "Under New York law, an employee's tortious acts fall within the scope of his employment if 'done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions.'" *United States v. Tomscha*, 150 F. App'x 18, 19 (2d Cir. 2005) (Summary Order) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)).

Reviewing the Attorney General's certification *de novo* and even accepting the allegations in the complaint to be true, the Court finds no basis to strike the certification because Officer Mordino's alleged actions indeed fell within the scope of his employment. In addition to alleging that Officer Mordino "acted within the scope of federal employment[ ] at the time of the incident" (Compl. ¶8), the plaintiff's complaint makes clear that Officer Mordino was performing one of his job duties — namely, outbound inspections — during the alleged incident. Stopping and detaining an individual pursuant to an outbound inspection is certainly the work of a CBP Officer. Even if Officer Mordino used excessive force during the inspection, he was at most performing his duties "irregularly," and courts have held that intentional torts may fall within the scope of one's employment. *See, e.g.*, *Patterson v. Khan*, 240 A.D.2d 644, 644 (2d Dep't 1997). For these reasons, the plaintiff's request to strike the Attorney General's certification should be denied, and it is recommended that the United States

be substituted as defendant in place of Officer Mordino with respect to the plaintiff's common law claims.

The plaintiff's common law claims against the United States are governed by the FTCA, *see Brasky v. Jermain*, 917 F. Supp. 175, 176 (W.D.N.Y. 1995), which requires the plaintiff to have presented an administrative claim to the appropriate federal agency before commencing suit in federal court, 28 U.S.C. §2675(a). Because it is undisputed that the plaintiff did not file an administrative claim with the CBP before commencing the instant action, it is recommended that her common law tort claims be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998).

VI.  <u>Official Capacity *Bivens* Claims</u>

"Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Id.* "[T]he United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts[.]" *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994); *see also Eulett v. Spiotta*, 6:14-cv-6191EAW, 2015 WL 9460566, at *5 (W.D.N.Y. Dec. 23, 2015) ("*Bivens* actions against federal officers in their official capacities are barred by the doctrine of sovereign immunity.").

The caption of the plaintiff's complaint indicates that she is asserting *Bivens* claims against Officer Mordino in both his individual and official capacities. Because the doctrine of sovereign immunity bars a damages suit against Officer Mordino in his official capacity, it is recommended that the plaintiff's official capacity *Bivens* claims be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Eulett*, 2015 WL 9460566, at *5 (dismissing official capacity claims under Rule 12(b)(1)).

## CONCLUSION

For the foregoing reasons, it is recommended that Officer Mordino's motion for substitution of party and to dismiss the complaint (Dkt. No. 10) be granted in part and denied in part. Specifically, it is recommended that only the plaintiff's Fourth Amendment excessive force claim against Officer Mordino in his individual capacity be allowed to go forward.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

Dated:   July 18, 2017
         Buffalo, New York

                                             */s/ Michael J. Roemer*
                                             MICHAEL J. ROEMER
                                             United States Magistrate Judge